City of Chicago, Defendant in Error, v. William Gall, Plaintiff in Error.

Gen. No. 20,671.

1. LICENSES, § 10*—*what is effect of license under ordinance licensing vehicles.* Section 2597 of the Chicago Code of 1911, requiring licensed vehicles to have a card stating the name of the owner and number of the license, and also the rates of fare and regulations as to baggage, applies only to persons who not only take out a license under article II, but who thereafter engage in the business covered by the license.

2. LICENSES, § 1*—*what is license.* A license is a permission or privilege granted by the State, directly or indirectly through the medium of a municipality, to perform certain acts or to carry on a certain business which, if done without such license, would be illegal.

3. LICENSES, § 1*—*what is nature of license.* A license of an automobile for carrying persons for hire does not create any contract between the city and the licensee, and the acceptance of the same does not impose any obligation upon the licensee to follow the business covered by the license.

4. MUNICIPAL CORPORATIONS, § 864*—*when presumption does not arise in suit for violation of ordinance licensing vehicles.* In a prosecution for failing to display a rate card, where the defendant is licensed to operate automobiles for hire, there is no presumption of law that the defendant actually engaged in the business covered by the license from the mere fact that he had taken out such license.

5. MUNICIPAL CORPORATIONS, § 860*—*what is nature of suit for violation of ordinance.* An action against a person licensed to operate automobiles for hire, for the failure to display a rate card is penal in its nature, though a civil suit, and the city is bound to prove clearly that the defendant has violated the ordinance in question.

6. MUNICIPAL CORPORATIONS, § 864*—*what evidence is competent in suit for violating ordinance.* In a prosecution of a person licensed to operate automobiles for hire, because of the violation of a regulation requiring rate cards to be posted, evidence that the defendant was

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

not engaged in the business covered by the license was competent and should have been admitted.

Error to the Municipal Court of Chicago; the Hon. JOHN A. MAHONEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Reversed and remanded. Opinion filed October 6, 1915.

SHERIFF, DENT, DOBYNS & FREEMAN, for plaintiff in error.

JOHN W. BECKWITH and ALBERT J. W. APPELL, for defendant in error; ULYSSES S. SCHWARTZ, of counsel.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

On May 23, 1914, a complaint was filed in the Municipal Court of Chicago, charging William Gall, the plaintiff in error, hereinafter called the defendant, with a violation of section 2597 of the Chicago Code of 1911. The material part of the complaint is as follows:

"P. J. Timmons, being first duly sworn, on his oath deposes and says that Wm. Gall, late of said City of Chicago, on the 22d day of May, A. D. 1914, at the City of Chicago aforesaid, did then and there operate a motor vehicle for hire upon the public streets, and did fail to have a rate card of fares posted in the said motor vehicle in a conspicuous place and was so found, in violation of section 2597 of the Chicago Code of 1911."

The case was tried before the court and a jury and a verdict was rendered by the latter finding the defendant guilty and assessing his fine at ten dollars. Judgment was entered on the verdict, and this writ of error followed.

Section 2597 is included in article II of chapter 79 of the said Code. Article II is entitled "Public Automobiles for Passengers" and provides for the licensing of public automobiles. Sections 2588 and 2597 of said article (the only ones material to a consideration of this case) read as follows:

"2588. No automobile, autocar or other similar vehicle which shall stand or be kept upon any public cab and hack stand or upon any street or public way in the city, for employment, shall be used anywhere within the city for the carrying or conveying of persons for hire or reward unless such vehicle shall be licensed as hereinafter provided."

"2597. There shall be fixed on the inside thereof and in a conspicuous place, in every vehicle licensed under the provisions of this article, in such manner that the same may be easily and conveniently read by any person riding therein, a card to be obtained from the city clerk, on which shall be printed the name of the owner and the number of the license of such vehicle, and also the whole of section 2613 relating to rates of fare, and the whole of sections 2605 and 2606 relating to the carriage of baggage, and lost baggage."

The evidence shows that the defendant was employed by the Frank Parmelee Company; that said company was engaged in the business of operating automobiles for the conveyance of passengers in the city of Chicago; that on May 22, 1914, the defendant drove an automobile up to the Union Station in the city of Chicago, stopped in front of the station and took on two passengers; that two police officers stepped up and asked the defendant if he had a rate card as provided for in said section 2597; that the defendant replied that he had not; that the officers examined the automobile and found the same without such rate card; that one of the officers rode with the defendant until he deposited the passengers at their destination, and then arrested him; that the automobile driven by the defendant on the occasion in question was licensed under article II, chapter 79 of the Chicago Code. The defendant offered to prove that at the time the license in question was issued, the Parmelee Company notified the city that it would not be used; that the vehicle in question was covered by and in use under a license issued by the city to the

Parmelee Company under section 2663, article VI, chapter 79 of the Chicago Code of 1911; "that neither the defendant nor the vehicle nor the Parmelee Company was engaged in the occupation, or use of the vehicle, covered by section 2597 of article II;" and that the automobile passenger business of the said company was licensed under and confined in its use to the business or occupation covered by said article VI. On objection by the city the court ruled that the offered evidence was incompetent and refused to admit the same.

The defendant requested the court to instruct the jury to find the defendant not guilty under the evidence. This motion was denied. The question as to the sufficiency of the evidence to sustain a verdict of guilty was also raised by the defendant in other ways, but we do not deem it necessary to refer specifically to these.

The defendant has assigned and argued a number of alleged errors, but in the view that we have taken of the case, it will only be necessary for us to notice one of these.

The defendant contends that the facts proved do not show a violation of section 2597. To quote from the defendant's brief:

"There is no evidence whatever in the case that the automobile in question at the time of the violation complained of, or at any other time, was in use for the purposes subject to the provisions of article 2, viz.— as defined in section 2588,—to 'stand or be kept upon any public cab and hack stand or upon any street or public way in the city, for employment.' And the prohibition of the ordinance is against such 'use' of vehicles without a license. * * * There is no evidence or ground of inference in the case that the vehicle was at the time alleged, or any other time, engaged in the occupation for which the license was issued, or to which the rate card regulation pertained;

and for this reason alone the jury should have been instructed to return a verdict for the defendant.''

The prosecution does not claim that there is any evidence in the record tending to prove that the automobile in question was being used on the occasion in question, or had been used at any time since the issuance of the said license in the business of keeping, using or operating an automobile ''which shall stand or be kept upon any public cab and hack stand, or upon any street or public way in the city for employment;'' but it contends that, ''having taken out a license under article II, it had the right to stand upon the public cab and hack stands, or upon the public street or ways for employment, and having that right it was subject to the obligations of the ordinance.  *  *  *  He had acquired this right and had engaged in the general occupation or line of business pursuant to their license; that is the operation of a public automobile, for the conveyance of passengers, and, having done so, he cannot now say that he is not using the license.''

It seems idle to argue that merely because the defendant had obtained a license to engage in the business contemplated by section 2597 he would be guilty of a violation of said section, even though he did not actually follow the said business.  No case has been cited by the city, nor are we aware of any authority, that supports such a doctrine.  We are satisfied that section 2597, as well as all other ''regulation sections'' in article II apply only to persons who not only take out a license under the article, but who thereafter engage in the business covered by the license.  In our judgment, the real question for us to decide in the present case is, does proof that the defendant obtained a license under the ordinance create a presumption that he actually engaged in the business covered by the ordinance? If it does not, it is clear that the city did not make out a prima facie case against the defendant.

A license is a permission or privilege granted by the State, directly or indirectly through the medium of a municipality, to *perform certain acts or to carry on a certain business* which, if done without such license, would be illegal. *Wilkie v. City of Chicago,* 188 Ill. 444; *Metropolis Theater Co. v. City of Chicago,* 246 Ill. 20. The license in question did not create any contract between the city and the defendant, and the acceptance of the same by the defendant did not impose any obligation upon him to follow the business covered by the license. It would seem to logically follow from this, that, in the present case, there can be no presumption that the defendant actually engaged in the business covered by the license from the mere fact that he had taken out the license in question. While he had the clear right to use the vehicle in the business for which the license was issued, it does not follow, as a presumption of fact, that he exercised the right merely because he obtained the necessary legal permission to do so. *A fortiori,* it does not follow as a presumption of law. In the present proceeding, the possession of the license by the defendant does not any more tend to prove that the defendant was actually engaged in the business covered by the license than would the absence of a license tend to prove that he was not engaged in the said business, if the present proceeding were a prosecution for doing business without a license. The possession of a license or the want of it would not fix the status of the defendant in respect to the alleged business in either case.

It must also be remembered that, while it is true that the present prosecution is a civil suit, nevertheless, the action is in its nature penal, and it was incumbent upon the city to prove clearly that the defendant had violated the ordinance in question.

The defendant insists that 25 Cyc. 638, is authority for holding that it was incumbent upon the city, to sustain its case, to prove that the defendant was actually

following the occupation licensed. It will be found, however, upon an inspection of the text cited that the author is referring to criminal cases in which the defendant is charged with following a taxable occupation without a license. The city cites in support of its contention the case of *Kopper v. Willis,* 9 Daly (N. Y., 1881) 460. In that case an action was brought to recover from the defendant as an innkeeper the value of an overcoat belonging to the plaintiff, alleged to have been lost in the defendant's restaurant while the plaintiff was a patron therein, and the question was whether the defendant's place of business was an inn (subjecting him to the extraordinary liability imposed by the common law upon innkeepers) or only a restaurant. It appears that the defendant, under the New York law, could not obtain a license unless upon proof by affidavit to the board of commissions of excise that he kept an inn, and that an inn was necessary for the accommodations of travelers in the place where he kept it, and the evidence showed that the defendant had made an affidavit, for the purpose of securing a license, to the effect that he kept an inn, and the court held that proof of the issuance of the license, coupled with the affidavit of the defendant connected therewith, was sufficient to establish the material fact that the defendant kept an inn. In our judgment this case tends to support the contention of the defendant.

After a careful consideration of the question, we have reached the conclusion that section 2597, upon which the prosecution in this case was predicated, only applies to cases in which a person not only takes out a license under the ordinance, but actually, thereafter, engages in the business covered by the ordinance, and, further, that the city did not prove the charge made in the information. We are also of the opinion that the evidence offered by the defendant, to which we have heretofore referred, was competent and should have been admitted.

The judgment of the Municipal Court of Chicago will be reversed and the case will be remanded for a new trial.

*Reversed and remanded.*